## HATTIE FARM *v.* FARM CORNN.

### No. 1954.

ARGUED SEPTEMBER 23, 1930.          DECIDED OCTOBER 9, 1930.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE DAVIS
IN PLACE OF BANKS, J., ABSENT.

OPINION OF THE COURT BY PERRY, C. J.

By decree of a circuit judge, dated May 22, 1926, a divorce *a vinculo* was granted to the present libellant. The

decree provided that the libellee should pay for the support, maintenance, clothing and education of the minor children during their minority and that he should also pay to the libellant as alimony for her support and maintenance the sum of $100 per month, to be paid to her monthly during her lifetime or until she should remarry. In February, 1930, the libellee presented a motion to modify the decree by reducing the amount of alimony payable thereunder, the motion being based upon the ground that his financial ability had been materially altered and reduced. The libellant opposed the motion upon the ground, among others, that the court had no power to modify an award of alimony following a divorce *a vinculo* so as to reduce the amount of alimony payable thereunder even when a sufficient showing is made as to the changed financial condition of the movant,—when that power has not been specifically reserved in the decree. The libellant has not remarried.

The trial judge before whom the motion was presented reserved to this court for its determination the following question: Has the circuit judge "the power when not specifically reserved in the decree upon a proper showing as to the changed financial condition of a husband to modify a decree of divorce *a vinculo* granting a monthly allowance to a wife as alimony so as to reduce the amount of such alimony payable under the terms of the decree?"

Our statutes relating to divorce contain the following provisions: "Upon granting a divorce for the adultery or other offense amounting thereto, of the husband, the judge may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such suitable allowance for the wife, for her support, as the judge shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties,

and all other circumstances of the case." R. L. 1925, Sec. 2979.

"Upon annulling a marriage, or decreeing a divorce, the judge may make such further decree as he shall deem expedient, concerning the care, custody, education and maintenance of the minor children of the parties, and determine with which of the parents the children or any of them shall remain; and the judge may from time to time afterwards, on the petition of either of the parties, revise and alter the decree concerning the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require." *Ib.,* Sec. 2980.

"Whenever the judge shall make an order or decree requiring a husband to provide for the care, maintenance and education of his children, or for an allowance to his wife, the judge may require him to give reasonable security for such maintenance and allowance; and upon neglect or refusal to give the security, or upon default of him and his surety to provide the maintenance and allowance, the judge may sequester his personal estate, and the rents and profits of his real estate, and may appoint a receiver thereof, and cause his personal estate and the rents and profits of his real estate to be applied towards such maintenance and allowance, as to the judge shall from time to time seem just and reasonable." *Ib.,* Sec. 2981.

"Upon decreeing a separation, the judge may make such further decree for the support and maintenance of the wife and her children, by the husband, or out of his property, as may appear just and proper." *Ib.,* Sec. 2989.

In *Alexander* v. *Alexander,* 13 App. Cs. D. C. 334, the precise question now before us came before the court for determination. The substantial question of law involved in the issue between the parties was, as stated by that court, "whether, when a decree has been rendered for a

divorce from the bond of matrimony, and in the decree alimony has been allowed at a certain fixed sum per month to the complainant wife as against the defendant husband, with reservation to the former to apply at any time for an increase, but without any reservation to the latter to apply at any time or under any circumstances for a reduction or suspension of the alimony, for any cause supervening thereafter, the court which rendered the decree has any lawful authority to entertain an application on the part of the husband for a reduction of the amount, and to render a decree for such reduction." *Ib.*, 341. The court said that the question "involves an inquiry into the jurisdiction of our courts with reference to the laws governing divorce and alimony," and proceeded: "Proceedings for divorce in this District are entirely the creation of statute law. As is well understood, divorce, whether from the bond of matrimony, or from bed and board, was unknown to the common law, both in England and in our own country. But the ecclesiastical courts have long claimed and exercised the authority to grant limited divorces, that is, from bed and board, or judicial separations, as they have sometimes, perhaps more appropriately, been called. The Parliament of England, we believe, sometimes, although very rarely, assumed the authority to grant absolute divorces from the bond of matrimony; and in our colonial days, in Maryland as in other colonies, the colonial legislatures occasionally granted divorces of both kinds, there never having been any ecclesiastical courts in the American colonies. In one at least of the States of our Union that authority is yet claimed and exercised by the state legislature. Now, however, both in England and in most of the States of our Union, and in the District of Columbia under legislation by the Congress of the United States, the authority to grant divorces is vested in the courts of general jurisdiction, generally in the courts of equity, to the ordi-

nary proceedings of which proceedings for divorce are usually assimilated." *Ib.,* 341, 342. The court then quoted from its statutes which in essentials are not at all dissimilar from ours.

The court continued: "These, we believe, are all the provisions of the statute which apply, directly or indirectly, to the subject of alimony; and from them it is apparent that we are remitted to preexisting law for a definition of alimony, its purposes and incidents. These were all well known in the ecclesiastical law of England so far as that law was administered by the ecclesiastical courts of that country; and they were recognized and were well known in the courts of the state of Maryland, and to some extent in the judicial procedure of the District of Columbia as derived to us from that state.

"Alimony has been defined to be 'the allowance which a husband by order of court pays to his wife, living separate from him, for her maintenance.' Bishop on Marriage and Divorce, Sec. 549; Bouvier's Law Dictionary, Title *Alimony.* It is, therefore, and it has always been held to be, apart from the express provisions of statutes authorizing divorce, an incident merely of separation by judicial decree from bed and board, and never of divorce from the bond of matrimony. See *Crane* v. *Meginnis,* 1 G. & J. 463. For, at common law, and by the dictates of reason, in the absence of statutory enactment, to justify the allowance of alimony, the relation of husband and wife must continue to subsist, although the parties are separated from each other. \* \* \* But when Congress, by the act of June 19, 1860, conferred upon the supreme court of the District the legal authority to grant divorces of both kinds, and provided that, in all cases, both those of divorce from the bond of matrimony and those of divorce from bed and board, the court should have power, if it saw fit, to award alimony to the wife, it not only empowered the court to exercise the

jurisdiction which the ecclesiastical courts of England had been accustomed to exercise, but added to it a new jurisdiction unknown to the courts of England, that of granting divorces from the bond of matrimony; and, moreover, it annexed to both the incident which theretofore had appertained only to the ecclesiastical courts and the judicial separations allowed by them, that of the allowance of alimony. In granting this latter authority, however, it must be presumed to have done so as it was then judicially understood and with all the qualifications and limitations that were then inherent in it. The authority was to grant alimony, if the court saw fit to do so, and no distinction was made in this regard between the two classes of divorce. It is very plain, therefore, that the allowance of such alimony in all cases was to be in accordance with the rules and methods then prevailing in the ecclesiastical courts or in the courts of chancery exercising the ecclesiastical jurisdiction or the jurisdiction conferred by the act of Maryland of 1777.

"Illustration of the subject may be had by reference to the provision in the Federal Constitution for trial by jury. The provision is that 'the right of trial by jury shall be preserved;' but there is no attempt to define what is meant by the expression 'trial by jury.' But the courts have long since held, and it is well settled law, that it means trial by jury such as that institution existed at the time of the formation of the Constitution, with all its substantial incidents of the introduction of testimony under the direction and control of a court, of its receiving the law in each case from the court, of secret deliberation, and the requirement of unanimity in decision, as well as that the jury should always be composed of twelve men, no more and no less. And numerous other similar illustrations might be adduced. So, with reference to the subject of alimony now under consideration; when the legislative authority pro-

vides for the allowance of alimony in all cases, without otherwise explaining or qualifying the jurisdiction, it is very clear to us that it was meant that the courts should proceed in that regard in accordance with the usages and customs of the ecclesiastical courts and of the courts of chancery at the time of the passage of the act.

"Now, what were the usages and customs, and what was the jurisdiction of the ecclesiastical courts, and of the courts of chancery, in the matter of alimony at and before the time of the passage of the act of Congress of 1860? Beyond all question, the jurisdiction of these courts was not exhausted by the rendition of the original decree. The decree for a separation was final; the adjudication that alimony to some extent was payable may have been final; but it was never contended or maintained that the amount of alimony then fixed was absolutely final and conclusive for all time and could not afterwards be modified; on the contrary, the authorities appear to be unanimous to the effect that the adjudication was a continuing one, and that the courts retained the whole subject under their control, increasing or diminishing the amount of alimony from time to time, as might seem just under changed or changing circumstances; and this without reference to the fact that the original decree might have been entirely silent in regard to the reservation of right to the parties, or either of them, thereafter to apply to the court for a modification. Bishop on Marriage and Divorce, Sec. 593; Am. and Eng. Encyc. of L., Title, *Alimony,* where numerous cases on the subject are collected.  *  *  *

"The decree for alimony is based upon the conditions existing at the time at which it is rendered; but these conditions are subject to change. The faculties of the husband at and before the time of the adjudication to discharge his legal and moral duties may have been ample. Through circumstances beyond his control, and by no fault of his, they

may have afterwards become greatly impaired. Assuredly it would not be just, even towards a greatly injured wife, who has been compelled to seek the protection of the law against his misconduct, to hold him to the same rigid liability in the days of his poverty as in the days of his prosperity, and to punish him, as for contempt of court, for not doing that which it has become impossible for him to do. The injustice that might thus be done by a rigid and inflexible decree for the payment of alimony might even be greater in the case of divorce from the bond of matrimony than in that of divorce from bed and board. In the latter case a wife remains a wife; the matrimonial relation continues to subsist; the moral obligation of the husband to support his wife remains; and they may at any time reconcile their differences, and become one again in fact, as they remain in law. But, in contemplation of the statute, a husband and wife divorced from the bond of matrimony become strangers to each other; and there is no possibility of reconciliation. The divorced wife is free under the law to contract other matrimonial alliances. She is free to act for herself, to retain her own earnings, to control her own property. And yet it is claimed that, no matter how much her financial condition may have been improved, no matter how much her circumstances have been changed, no matter how much her divorced husband's circumstances may have been impaired, and even if he has, through no fault of his own, been reduced to absolute poverty and penury, he still remains legally and morally liable to pay alimony for the support of his divorced wife, living perhaps in luxury, and subject to imprisonment if he fails in such payment. This would be so grossly unjust as to shock the conscience. And yet to this injustice the courts would necessarily be led in many cases, if the cast-iron rule prevailed of absolute finality in the matter of the allowance of alimony. We do not think that the statute contemplated anything of that kind."

It also said: "We believe that it is also conceded that if there is a reservation to the husband in a decree for the allowance of alimony that he may apply to the court at any time for a reduction, the court would then have the authority to make such reduction. And it is claimed that, as there was no such reservation in the original decree in this case, the court is now powerless in the premises. Undoubtedly it would have been better in the original decree to have included a reservation to both parties to move at any proper time thereafter for a modification in the matter of alimony upon good cause shown for such modification. And yet it is not quite apparent how the court could have well reserved to itself the authority to modify a decree if that authority was not already vested in it by law. * * * In proceedings for divorce the jurisdiction of the courts is in some things necessarily continuous. In the case of the custody and maintenance of the children of the unhappy marriage the court must necessarily retain a continuous jurisdiction. The enforcement of the payment of alimony implies a continuous jurisdiction." *Ib.*, pp. 343-350.

There are cases in which the opposite view has been taken. The reasoning, however, of the *court of appeals of the District of Columbia* appeals to us as being entirely sound. While as in that District so also in this Territory the subject of divorce is regulated by statute and the jurisdiction was granted by statute, nevertheless when the power was vested in the courts to grant "alimony" or a "suitable allowance for the wife, for her support," the term alimony or its equivalent must be deemed to have been used by the legislature in the sense in which those terms were understood and used in the ecclesiastical courts which exercised jurisdiction over the subjects of divorces and of alimony and the power and the right exercised by the ecclesiastical courts in increasing or reducing amounts

awarded as alimony must be deemed to have been intended by our legislature to be conferred upon our courts under the grant of power to award alimony. The case is analagous to that of the guarantee in our Constitution of a trial by jury. That means, it has been clearly held by the Supreme Court of the United States, a trial by jury as known and had at the common law.

Moreover, the very words of our statutes, above quoted, indicate the same intention on the part of the legislature. In section 2979, R. L. 1925, the judge granting the divorce is authorized "to provide such suitable allowance for the wife, for her support, as the judge shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." Necessarily, in nearly all, if not all, of the divorce cases coming before the courts for adjudication the financial ability of the husband, the situation of the parties and other relevant circumstances of the case are subject to changes from time to time. In some instances the financial capacity of the husband becomes greater and in some less, with the passage of time. In other instances the financial capacity of the wife becomes greatly improved by reason of remarriage or other circumstances, or becomes lessened by adversity. It must of necessity be known to every judge granting a decree of alimony, and it must of necessity have been known to the legislature enacting the law, that the financial and other circumstances of the husband and of the wife would almost always change from time to time. And when the courts were authorized to make in each case an award deemed reasonable with reference to the ability of the husband, the situation of the parties and all other relevant circumstances, the strong implication is that they were authorized and were intended to be authorized to make flexible decrees either providing within their own terms for an automatically changing de-

gree of support or else to amend those decrees from time to time. A provision in the original decree of divorce providing that the husband should from month to month pay to the wife for her support fifty per cent or forty per cent or any other part of his salary or of his gross income or of his net income as the same might be from time to time would certainly be authorized by the words of the section under consideration. Why, then, is the court not equally authorized to alter the percentages or the amounts awarded from time to time as circumstances may justify and require? We think that the same principle applies.

The mere fact that in section 2980 it is expressly stated, with reference to decrees for the separate education and maintenance of minor children that the judge "may from time to time afterwards, on the petition of either of the parties, revise and alter the decree * * * as the circumstances of the parents and the benefit of the children may require," does not alter the case. In spite of that provision it still remains true that in section 2979 the reference to "a suitable allowance for the wife, for her support" was a reference to alimony as it was known in the ecclesiastical courts and it still remains true that the indications within that section (2979) are, as above stated, in favor of the same construction.

The provision in section 2981 that in the enforcement of a decree for the maintenance of the children or for the allowance to a wife the court may order sequestration of the personal estate of the husband and father and may "cause his personal estate and the rents and profits of his real estate to be applied towards such maintenance and allowance, as to the judge shall from time to time seem just and reasonable," likewise points to a conception on the part of the legislature that the jurisdiction in the divorce courts over the subjects of maintenance of children and allowance to the wife was, and ought to be, of a continuing nature.

On behalf of the wife the argument is presented that alimony is granted in lieu of dower and that therefore it becomes, as awarded, a property right which cannot be subsequently disturbed; and *Buckley* v. *Monsarrat,* 12 Haw. 265, is referred to as authority in support of this contention. In our opinion alimony is not granted in lieu of dower. The latter is a provision made by the law for the support of a wife after the death of the husband. The former is a provision which courts are authorized to make for the support of the wife during the life of the husband. The fact or the quantity of the dower is never affected by the fact whether the wife has or has not had alimony. The fact or the amount of the alimony is never affected by the fact of whether the husband owns or is likely to own at the time of his death property which is subject to dower. In divorce cases generally it is not, and in the case at bar it was not, the subject of inquiry, when alimony was under consideration, whether the husband has or had property subject to dower and if so what the value of that dower would be. If alimony were in lieu of dower, as it is not, this would become a material inquiry. In *Buckley* v. *Monsarrat, supra,* it was not held that alimony is in lieu of dower. It was simply held that in order to be entitled to dower a woman must be the wife of the decedent at the time of his death and that a woman who has been divorced *a vinculo matrimonii* is not the wife and cannot be the widow. On the contrary, the court quoted with approval from a New York case (*Day* v. *West,* 2 Edw. Ch. 592) as follows: "It may be asked what becomes of the wife's right of dower where she proceeds against her husband and obtains a divorce *a vinculo matrimonii?* The answer is obvious. In such a case all right to dower is gone; not, however, because she has obtained an allowance of permanent alimony, or anything in lieu of alimony, if either should be decreed, but because of the dissolution of the

marriage which puts an.end to the relation of husband and wife; and by necessary consequence to the right of dower; since it is essential to dower that the marriage should subsist at the death of the husband." 12 Haw. 270. The clear inference from this is that this court regarded alimony as not being in lieu of dower.

The practice in those of our courts which have jurisdiction of divorce cases has been for many years last past to consider applications for modification of allowances of alimony and to grant such applications whenever the circumstances so required. As long ago as 1896 this court, in *Laing* v. *Laing,* said that "the amount of alimony is subject to change by the trial court." 10 Haw. 183, 184, 185.

In *Hart* v. *Hart,* 23 Haw. 639, 643 (1917), this court said : "Although in this Territory there is no express statutory authority therefor, a circuit judge has undoubted authority to alter or modify the decree respecting the award of alimony upon a proper showing. 2 Bishop on Marriage and Divorce, 6 ed., sec. 429; *Stevens* v. *Stevens,* 72 Pac. 1061; *Wheeler* v. *Wheeler,* 18 Ill. 39; *Olney* v. *Watts,* 3 N. E. 354. Application for such modification is ancillary to and dependent in its nature upon the main proceedings and is addressed to the sound judicial discretion of the court, and the inquiry is whether sufficient cause has intervened since the decree to authorize or require the court.to change or entirely withdraw the allowance."

In *Otani* v. *Otani,* 29 Haw. 866 (1927), this court proceeded upon the assumption of the existence of the power now under consideration and sustained an order by a circuit judge terminating the provision for alimony on the ground of the misconduct of the wife. The long-sustained view of this court and of the trial courts on this subject should not now be reversed without good cause. Not only do we not find any such cause, but our conclusion is that

this past practice and these past decisions were correct and in conformity with the statute.

The reserved question is answered in the affirmative.

*H. E. Stafford* (also on the briefs) for libellant.

*I. M. Stainback* (Huber, Kemp & Stainback on the brief) for libellee.

