# ARTHUR S. HARRINGTON

*v.*

# ETHEL E. HARRINGTON.

## NO. 2997.

Argued May 25, 1955.  Decided June 22, 1955.

STAINBACK AND RICE, JJ., AND CIRCUIT JUDGE HEWITT IN PLACE OF TOWSE, C. J., ABSENT.

OPINION OF THE COURT BY STAINBACK, J.

The parties to this proceeding were divorced on February 4, 1947. Prior to the divorce decree the parties had executed a "SETTLEMENT AGREEMENT INCIDENT TO AND IN CONTEMPLATION OF DIVORCE." The present proceeding seeks an accounting for the payment of 25 per cent of the insurance premiums earned by the Harrington Insurance Agency, which agency had been transferred to the wife, appellant, under the settlement agreement with a stipulation that the wife, appellant herein, should pay to the husband, appellee herein, 25 per cent of the premiums collected.

The settlement agreement consisted of 10 typewritten pages reciting the institution of divorce proceedings by the husband, appellee herein, and the cross-libel by the wife, appellant herein; that it was contemplated by the parties a decree of divorce would be entered for the wife on her cross-libel, and that the parties desired to avoid the expense of litigation, desired to settle the care, custody

and control of their minor children, the property rights and amount of alimony to be paid, the support and maintenance for their adult mentally retarded daughter, that attorneys represented each party, that the parties were fully and independently advised and informed of their rights, duties and obligations arising because of the marital or family relationship, and desired to enter into this agreement "incident to and in contemplation of this divorce." The agreement further provided that it should be effective only in case the decree of divorce was granted and only in case said decree should not be inconsistent with the provisions of the agreement and provided that the decree of divorce should contain substantially the provisions as recited therein, namely, that the cross-libelee shall pay to the cross-libelant by way of alimony monthly payments in the amount of $200 each; that the payments should continue until the death or remarriage of the cross-libelant, whichever shall first occur, and shall terminate upon the death or remarriage of the cross-libelant; that in the event of the death of cross-libelee prior to the death or remarriage of the cross-libelant, the "payments shall be binding upon the estate of the Cross-Libellee and upon his heirs, executors and administrators and shall constitute a valid claim against his estate." The husband expressly agreed that the obligation to make said alimony payments should be binding upon his estate "pursuant to his agreement hereby made, irrespective of the validity of said decree as applied to any period after the death of the Husband." The agreement provided that the wife should have the custody of the two minor sons during their minority, and that the father, cross-libelee, should provide for the support, maintenance and education of the said minor children; it further provided for the support and maintenance of the adult mentally retarded daughter by the father; and provided for a division of property between

the husband and the wife, as specifically set forth in the agreement; jurisdiction was reserved to alter the decree as to the support and maintenance of the minor children.

The decree of divorce as granted provided that the "Libellant and Cross-Libellee, shall pay to Libellee and Cross-Libellant, the sum of Two Hundred Dollars ($200.00) per month for her support and maintenance during her lifetime, or until she shall remarry * * *." It did not provide that the "alimony" payments should be binding upon the husband's estate and continue after his death so long as the wife had not remarried, nor did it refer to or attempt to incorporate the "settlement agreement" in any respect.

In September, 1953, appellee filed a motion before Judge Felix, the then divorce judge, seeking elimination or reduction of his "alimony" payments due to changed circumstances. At the same time appellant sought to have the judge who had originally granted the divorce, Judge Buck, but who was not then presiding in divorce, approve the property settlement but the motion was denied as coming too late.

Judge Felix had a hearing upon the motion to reduce alimony; at the hearing he refused to admit any evidence concerning the property settlement and stated: "The property settlement is not involved here. The Court refuses to hear that, so it is out of the picture. The only thing the Court is concerned with is the Libellant was ordered to pay to Cross-libellant Libellee the sum of $200.00 a month."

Again, at the same hearing, an objection was sustained as to the question regarding the provision of the property settlement whereby the wife agreed to pay 25 per cent of the commissions from the Harrington Insurance Agency to the husband, as was the objection sustained to any questions upon the property settlement, the court stating:

"The Court wouldn't let any evidence come in in respect to that property settlement agreement on the basis that *it was not even before the Court,* and at that time I stated the Court would not consider any evidence regarding the property settlement agreement; however, the effect of what actually was done could come into evidence, but not pursuant to any agreement, but what was actually done." (Emphasis added.)

Judge Felix, after further hearing, proceeded to amend the divorce decree to reduce the payments to $80 per month.

To the suit for an accounting for 25 per cent of the premiums of the Harrington Insurance Agency, the respondent-appellant filed a cross-bill seeking the enforcement of the settlement agreement in full, particularly as applied to the "alimony" payments to be made to the appellant by the petitioner-appellee.

To the cross-bill filed by appellant, appellee filed a plea in bar on the ground that the "alimony" provisions in the settlement agreement were not approved by the judge in the divorce proceedings and were, therefore, invalid and that the question of "alimony" was adjudicated by the judge in the divorce proceedings and therefore cannot be asserted in this equity proceeding.

The chancellor dismissed appellant's cross-bill on the ground that the matter relative to alimony had been adjudicated in the divorce proceeding.

It will be noted there is a basic difference between the monthly payments to be made under the settlement agreement and the alimony to be paid under a divorce decree, as the divorce decree provides for payment of $200 per month during appellant's life or until she shall remarry, while the settlement agreement provides for payment of $200 per month during appellant's lifetime or until she shall remarry but also contains the additional provision

that "In the event of the death of the Cross-Libellee prior to the death or remarriage of the Cross-Libellant, such payments shall be binding upon the estate of the Cross-Libellee and upon his heirs, executors and administrators and shall constitute a valid claim against his estate." In addition, the settlement agreement provides not only that the settlement agreement payments shall be made before and after the appellee's death if the wife is alive and still remains unmarried, but the husband expressly agrees that the obligation to make such payments shall be binding upon his estate "pursuant to his agreement hereby made, irrespective of the validity of said decree as applied to any period after the death of the Husband."

In this connection it is well to discuss to some extent the history and nature of alimony and point out the payments as provided for in the settlement agreement are not alimony however they may be termed.

Alimony, as the word indicates, is money paid for aliment or support. At an early date marriage was regarded as a sacrament and indissoluble although divorce *a mensa et thoro* was granted by the ecclesiastical courts for adultery and cruelty. There was also the ecclesiastical power to declare a marriage a nullity *ab initio* because of some impediment existing at the time of the marriage. Divorce courts were established by Parliament in 1857. This had already been done in most of the American States although in the early days divorces were granted by state legislatures.

Alimony in its origin was merely a remedy for the wife where conditions had grown intolerable and the husband was an offender against the marriage relationship. It was not available to her unless she were in need nor could she claim it unless she be without sin in respect to her marital relations; but today alimony is in many respects a settlement of property rights of the parties and the distribution

of the assets of a quasi-partnership heretofore existing, and is no longer considered a "reward of merit for the virtuous or as a punishment for the wrongdoer." (*Hollinrake* v. *Hollinrake,* 40 Haw. 397, 407.)

Courts at present are considerably confused as to the nature of alimony. There are in general two views of its nature which are discussed by Mr. Chief Justice Cullen in the case of *Wilson* v. *Hinman,* 182 N. Y. 408, 75 N. E. 236. This case is discussed in 16 Columbia Law Review 217. One view holds that alimony is of the same character as the right of support of the wife by the husband which has been lost by the dissolution of the marriage; the other that alimony is the settlement of property rights of the parties and a distribution of the assets of a quasi-partnership hitherto existing. Under the theory that alimony defines and makes specific the husband's original obligation, this obligation, being personal, ceased upon the husband's or the wife's death. However, courts hold that though alimony is property, it is a particular kind which calls for special protection of the court and it may under no circumstances be diverted from its original purpose. It cannot be reached by the wife's creditors; it cannot be assigned; it is not discharged by the husband's bankruptcy; nor can a husband offset it against a debt owed to him by the wife, and it ceased on the death of either party. (*Audubon* v. *Shufeldt,* 181 U. S. 575, 577, 578; *Hollinrake* v. *Hollinrake,* 40 Haw. 397, 406.)

The first question is: Is the contract or property settlement between husband and wife valid?

At common law all contracts between husband and wife were invalid. (Further, any agreement looking toward divorce was void.) However, in modern times by statute the wife's rights have been enlarged from time to time throughout the many jurisdictions so that today sepa-

ration agreements are valid in practically every jurisdiction.

"While there are a few decisions to the contrary, separation agreements which contemplate a separation in praesenti or the continuance of an existing separation are generally upheld by the courts, both in England and in this country." (17 Am. Jur., *Divorce and Separation*, § 723, p. 543.) The text then points out that in early days due to the common-law disability of husband and wife to contract with each other, such contracts were entered into in behalf of the wife through the medium of a trustee. "According to the better view, however, it seems that so far as regards the enforcement of the agreement by a court of equity, it is immaterial whether the contract is directly between husband and wife or through the medium of a trustee for the wife." (17 Am. Jur., *Divorce and Separation*, § 730, p. 547.)

In Hawaii after 1888 the common-law fiction of the unity of husband and wife was destroyed by statute. By section 12366, Revised Laws of Hawaii 1945, as amended by Act 5, Session Laws of Hawaii 1945, a wife is given the privilege of making contracts with other persons than her husband as if she were sole, and it further provides that a married woman and her husband may contract with each other in the following matters:

"2. By agreement settling their respective rights in property owned by them, or either of them, when such agreement is made in contemplation of divorce or judicial separation;

"3. By agreement providing for alimony or other periodic payments when such agreement is made in contemplation of divorce or judicial separation, *provided,* however, that such agreement shall be approved by the judge hearing the cause between said parties; any such agreement which shall be approved as herein provided shall be

valid and binding between the parties in accordance with its terms and shall not thereafter be subject to modification or rescission or annulment by the judge pursuant to section 12226 or section 12229 or otherwise, and any such agreement shall thereafter be subject to modification or termination by agreement between the parties, *provided,* however, that any such agreement or modification or termination shall be approved by a judge of the same circuit as the judge who approved the original agreement; * * *"

That a contract between the parties fixing the amount of "alimony" as a settlement in full is valid is law in Hawaii see *Miller* v. *Cooke Trust Co.,* 33 Haw. 690, 695, even though under the Hawaiian statute alimony payments may be modified. In this case the court held that where the amount of alimony had been fixed by agreement of the parties and ratified by the court it became binding "to the same degree and with the same effect as *ordinary contracts* between the parties admittedly *sui juris* and is not subject to revocation or modification except by consent of the parties thereto." (Emphasis added.)

The authorities are practically unanimous that where there is a separation agreement which has *not* been incorporated into the divorce decree the same is valid and binding and may not be modified whether the payments be termed alimony, property settlement or by some other name, and the authorities usually hold that this agreement is not incorporated merely by reference.

The contention of appellee is that the provisions of the contract that require money payments were not approved by the judge and, therefore, are subject to modification, that these provisions cannot be construed as a settlement of property rights under subsection 2 of the statute which does not require the approval of the judge, but that the appellee's right for a share in the profits of the Harrington

Insurance Agency was a settlement of property rights and was a valid contractual right without the approval of the judge and may be enforced in equity.

It is indeed difficult to see how it could be maintained that part of the contract is legal but the part of it which is a substantial part of the consideration is void. The support and maintenance provision in the separation agreement is so interwoven that it constitutes a part of the division of the property of the parties; though termed "alimony" in the property settlement agreement, it is not subject to modification and continues after death.

It is not seriously disputed that property settlement agreements between husband and wife may not be modified by the courts. As stated in *Miller* v. *Cooke Trust Co., supra,* at page 695 : "The courts have repeatedly announced that the *agreement* between the parties effecting a property settlement in a divorce proceeding, if fair, moral and not against public policy, *should be enforced."* (Emphasis added.) But the argument is made that in the present case these payments are alimony, not property settlement; or, if not alimony, at least "other periodic payments," and thus within the statute requiring approval.

In *Tracy* v. *Tracy,* 205 S. W. (2d) 947 (Mo.), where there were periodic payments called alimony by the parties, the court stated that such constituted an integral and important element in the adjustment of property rights.

Also, *Ettlinger* v. *Ettlinger,* 3 Cal. (2d) 172, 44 P. (2d) 540, held that monthly payments to be for the wife's "support and maintenance" constituted an integral and important element in the amicable adjustment and liquidation of such property rights. "In our opinion, the contract suggests that such payments were to be made to and received by plaintiff as part of the property settlement and in lieu of property rights."

The use of the term "alimony" in the agreement does not change the intent of the terms of the agreement. The whole agreement must be examined to ascertain the meaning of the document and the intent of the parties. In Hawaii the word "alimony" means support money which the husband is bound to pay to his divorced wife during his lifetime. The obligation ceases upon the death of the husband or the wife. (*Farm* v. *Cornn*, 31 Haw. 574, 585.)

The present agreement uses the term "alimony" but obviously it is not alimony as used in the technical sense because the payments are to be continued after the death of the husband should the wife survive.

In *Sinkler* v. *Sinkler*, 49 N. Dak. 1144, 194 N. W. 817, 821, the words "permanent alimony" were used in describing certain monthly payments. The court in interpreting the word "alimony" said: "* * * We do not think that the term 'alimony' was there used in the technical sense. That would be too narrow a construction to give the decree in view of the findings of the court and the stipulation of the parties. * * *"

The case of *Lane* v. *Lane*, 255 P. (2d) 110, held that where an agreement between husband and wife dividing community property and providing for support of the wife for a specified number of years and obligating the husband's estate to complete the performance of the agreement if the husband died, constituted a property settlement agreement and was not in the nature of alimony.

In *Howarth* v. *Howarth*, 183 P. (2d) 670, where a Utah decree merely approved a property settlement agreement, the agreement was *not* merged in the decree and hence the obligations imposed by the agreement were enforceable by civil action in the *California* courts. The court stated in substance that in an action by a divorced wife to recover sums due under property settlement and separation agreement, payments were not in the nature of alimony but by

way of property settlement because of a provision in the agreement that weekly payments "are for the support of the wife" where such language was followed by a provision that upon the death of the husband during the period in which the wife was entitled to payment his estate should continue such payments. The court pointed out that the obligation to pay alimony terminates upon the death of either party; it further held that the divorced wife. was not precluded from recovering sums due under the property settlement and separation agreement though the husband claimed a Utah divorce decree could be modified by the Utah courts.

*Adams* v. *Adams*, 117 P. (2d) 265 (Cal.), held: "Property settlement contracts in which support and maintenance provisions are not in nature of alimony but are part of division of property, including contracts providing solely for payment of monthly or lump sums 'in lieu of community property', must be treated like other property settlement agreements dealing solely with division of property." This case further states that "Property settlement agreements occupy a favored position in the law of this state and are sanctioned by the Civil Code." This case points out that the most difficult problems arising from such contracts are those concerning support and maintenance provisions, that the parties upon separation may agree to provide for support and maintenance in a variety of ways, and generally fall into three categories: (1) contracts in which the support and maintenance provisions are in the nature of alimony; (2) contracts in which the support and maintenance provisions are not in the nature of alimony but are part of the division of property; "Such contracts must be treated like other property settlement agreements dealing solely with divisions of property"; (3) contracts in which a wife waives all support and maintenance in consideration of receiving a more favor-

able division of the community property.

In addition to *Adams* v. *Adams, supra,* there are many authorities that property settlements are favored by the law. For example, in *Walters* v. *Walters,* 99 N. E. (2d) 342, 345-346 (Ill. 1951), the following statement is made: "Parties to divorce suits are to be commended for their attempts to settle their property interests amicably. This not only saves the courts from being fraught with detail, and the necessity of repeated, recurrent hearings, but leads to better feeling and the peace of mind among the litigants. In proper property settlement cases where equities are surrendered and substantial property rights relinquished, no party should be penalized for refraining from throwing the burden of piecemeal accounting upon the court."

The agreement herein is a property settlement agreement. It was not incorporated in the decree so as to result in a merging of the contract in the decree, and the contract controls the rights of the parties thereto.

The second question is whether there was a prior adjudication of the payments provided for in the property settlement by the divorce judge.

It is obvious that the divorce judge did not purport at any time to adjudicate the contract. In fact, it was never before the divorce court at any time. At the time of the divorce decree it was *not* submitted to the judge for approval and subsequent thereto the court would not permit any evidence relative to the property settlement agreement, stating that it was not before the divorce court. Under such circumstances the terms of the contract are binding.

In fact, unless the settlement agreement were incorporated and merged into the decree, it could not be enforced in the divorce court but would necessitate a suit at law or, as in this case, specific performance in equity. (*Shogren* v. *Superior Court,* 209 P. [2d] 108.)

*Towne* v. *Towne,* 159 P. (2d) 352, held where a property settlement included an amount of money for the support of the wife, "husband's obligation under settlement contract was contractual and not decretal, and hence actions to recover installments under such contract were maintainable in court other than the one granting divorce."

In *McWilliams* v. *McWilliams,* 110 Colo. 173, 132 P. (2d) 966 (1942), the court observed: "The stipulation and property settlement having been approved by the court, but the terms thereof not having been set forth in the decree of divorce, the rights of the parties rest upon the contract and not upon the decree, and are contractual and not decreed rights and obligations."

"We there held [*Adams* v. *Adams,* 29 Cal. (2d) 621, 177 P. (2d) 265] that separation agreements in which the support and maintenance provisions are so interwoven that they constitute a part of a division of the property of the parties, and thus not in the nature of alimony, are not subject to modification either before or after merger except as mentioned in the above stated rule." (*Flynn* v. *Flynn,* 265 P. [2d] 865, 871.) Also see *Howarth* v. *Howarth, supra.*

*Hamilton* v. *Hamilton,* 210 P. (2d) 750, stated: "Divorce decree adjusting property rights of parties is not subject to modification though it is based upon agreement of the parties." It held that where a provision for support in a property settlement "constitutes an integral element in amicable adjustment of property rights of parties, court cannot thereafter modify decree."

*Herd* v. *Bilby,* 186 P. (2d) 833, held that "Where property settlement entered into by parties to divorce suit was not incorporated in divorce decree, but decree merely affirmed contract after finding that settlement was fair and just, contract was not merged into decree and rights

of parties in property were thereafter governed by contract and not by decree."

In *Watt* v. *Watt*, 43 N. E. (2d) 633, where as part of a property settlement a wife was granted an allowance for her future support, the award of the "alimony" was a division of property of the parties and could not be modified.

To the same effect is *Kastner* v. *Kastner*, 90 Colo. 280, 9 P. (2d) 290 (1932).

The third question is whether the provisions for monthly payments to the wife which are included in the agreement in the instant case — made in contemplation of divorce or judicial separation and effecting a property settlement between the parties — for validity required approval of the judge hearing the cause, as being "alimony or other periodic payments," within the purview of paragraph "2" of section 12366, Revised Laws of Hawaii 1945, *supra,* and should be deemed void if lacking such approval.

In interpreting a statute one of the rules is that the purpose that induced the legislature to enact it and the reason and the spirit of the law must be considered; that while the most desirable construction of a statute is that which is consistent with both the spirit and the letter thereof, frequently the purpose of an act justifies a departure from the literal construction of the wording, and a thing which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers. (*Chang* v. *Meagher et als.*, 40 Haw. 96.)

Our Revised Laws of Hawaii 1945 set forth in substance that these rules should be followed in the interpretation of a statute. Section 12 speaks of the reason and spirit and the cause which induced the legislature to enact the law; section 13 sets forth that construction which leads

to an absurdity should be rejected; section 10 states that where words are dubious the meaning may be sought by examining the context.

In *Rathburn* v. *Kaio,* 23 Haw. 541, it is stated: "If a literal interpretation of the language used in a statute would lead to palpable injustice the courts will search for a more reasonable meaning of the language which will also accord with the spirit of the enactment."

In *Chong Yet You* v. *Rose,* 23 Haw. 220, the syllabus sets forth in part: "In case of incompleteness or ambiguity of expression the reason and spirit of the statute should be considered. That which is necessarily or plainly implied in a statute is as much a part of it as that which is expressed."

These rules are illustrated by many cases in the United States Supreme Court. An early one was that of *Holy Trinity Church* v. *United States,* 143 U. S. 457, in which the Supreme Court went to an extreme in holding that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Brewer* v. *Blougher,* 14 Peters 178 (U. S.), and *Jones* v. *Guaranty, etc., Co.,* 101 U. S. 622, are among the many such decisions.

The reason for that portion of the statute requiring approval of the divorce judge where the parties stipulate as to alimony is for the purpose of protecting the parties, particularly the wife, against fraud or overreaching and injustice on the part of the other party.

Where a property settlement is made in the absence of fraud and misconduct amounting thereto, the courts are reluctant to interfere with the contract of the parties. (*Miller* v. *Cooke Trust Co., supra.*)

The construction contended for by appellee would lead to "palpable injustice" in the present situation. We have no hesitancy in holding that the provision regarding

periodic payments, which are a main consideration and an integral part of the property settlement, does not require the approval of the court to make it valid, and this is particularly true where no part of the agreement has been submitted to the court or been ruled upon in any form or fashion. The contract then stands on the basis of any other contract and can only be rescinded under the ordinary rules applicable to a contract.

Where one party to a contract brings a suit for an accounting for commissions due on insurance premiums, it would be a travesty on justice to hold that a major item of the consideration for the contract is void because not approved by the judge and the other part valid. So far as appears from the record, the property settlement agreement is fair and equitable to both parties and no reason has been shown why it should not be considered valid in all respects. The law favors a property settlement agreement made by parties contemplating divorce or judicial separation. See cases *supra*.

This being an equity proceeding, any equities available to either party may be shown in the accountings sought by the parties hereto.

Reversed.

*H. Edmondson* (also on the briefs) for appellant.

*W. W. Saunders* (*Lewis, Buck & Saunders* and *R. L. Teege* on the brief) for appellee.